UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMISON WARFIELD, | ) |
| Plaintiff, | ) |
| v. | ) 2:25-cv-00037-DCLC-CRW |
| W.N. MOREHOUSE TRUCK LINE, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's W.N. Morehouse Truck Line, Inc.'s ("Morehouse") motion to dismiss [Doc. 7] Plaintiff Jamison Warfield's ("Warfield") complaint [Doc. 1] for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). Warfield has responded [Doc. 14] to which Morehouse has replied [Doc. 15]. The matter is now ripe for adjudication. For the reasons stated, Warfield's complaint is **DISMISSED WITHOUT PREJUDICE**.

I.   BACKGROUND

Warfield, an African-American individual, resides in Tennessee, and Morehouse is a Nebraska corporation with its principal place of business in Omaha, Nebraska. [Doc. 1, ¶¶ 1–2]. Warfield was employed by Morehouse from October 3, 2023, until February 12, 2024, when Morefield terminated his employment. *Id.* at ¶ 7. Warfield generally asserts that Morehouse ended his employment as a result of unlawful race-based discrimination. In support of this claim, Warfield alleges that during his employment, Morehouse assigned him fewer deliveries than his Caucasian coworkers and required him to remain on the lot between deliveries—requirements that were not imposed on similarly situated Caucasian employees. *Id.* at ¶¶ 10–11. He also alleges

that Morehouse accused him of violating company policy for "going 10 miles off track to safely park the truck," even though Caucasian employees who engaged in comparable conduct were not disciplined. *Id.* at ¶ 12. He contends he reported this discriminatory treatment, but Morehouse took no corrective action. *Id.* at ¶ 13.

On December 5, 2023, while making a delivery in Iowa, Warfield was informed that his next delivery would not be available until the following morning. *Id.* at ¶ 15. Due to the delay, he drove to a truck stop to shower and eat. *Id.* Upon his arrival, law enforcement arrested him on allegations that he had stolen property from Morehouse. *Id.* at ¶ 16. The criminal charges were later dismissed, but Morehouse terminated his employment. *Id.* at ¶¶ 18, 20–21. Warfield also alleges that Morehouse confiscated his personal belongings, valued at about $2,000.00, from his vehicle and failed to pay him his final paycheck. *Id.* at ¶¶ 19–21. He asserts that Morehouse then replaced him with a Caucasian worker. *Id.* at ¶ 22.

Based on these allegations, Warfield asserts claims for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act, as well as claims under the Fair Labor Standards Act ("FLSA") for Morehouse's alleged failure to pay his final wages. *Id.* at ¶¶ 33–44. He seeks back pay, compensatory damages for emotional distress, and other relief. *Id.* at ¶ 45.

Morehouse moves to dismiss the complaint for lack of personal jurisdiction, arguing that as a Nebraska corporation with its principal operations in Nebraska, it lacks sufficient contacts with Tennessee to justify being hauled into court here. [Doc. 8, pgs. 3–6]. It notes that it is not registered to do business in Tennessee, does not maintain operations in Tennessee, and derives only a small portion of its business from Tennessee clients. *Id.* It contends that Warfield's claims do not arise out of any Tennessee-related conduct and that Warfield's residency alone cannot confer

jurisdiction on this Court. *Id.* It argues that requiring it to litigate in Tennessee would violate due process because its contacts with the state are neither continuous nor systematic. *Id*.

Warfield opposes the motion, though his initial objection concerns Morehouse's misidentification of his first name as "James" instead of "Jamison." [Doc. 14, pg. 1]. He argues this error reflects a lack of diligence and undermines Morehouse's jurisdictional analysis. *Id.* at pg. 2. But the Court will not address that point, as it does not relate to the merits of the motion. On the merits, Warfield argues that Morehouse's business activities in Tennessee, however limited, and its decision to hire and supervise him while he resided in Tennessee, establish sufficient minimum contacts to support jurisdiction. *Id*.

In reply, Morehouse notes that Warfield relied on incorrect and nonexistent case citations. [Doc. 15, pgs. 1–2]. Substantively, Morehouse argues that it did not purposefully avail itself of conducting activities in Tennessee, asserting that it merely hired a Tennessee resident through a general Facebook job posting. *Id.* at pgs. 2–4. Morehouse contends that hiring a resident of Tennessee, without more, is not sufficient purposeful availment nor does it create a continuing obligation in Tennessee. *Id.* at pg. 3. Morehouse maintains that Warfield's residency is the only connection to Tennessee and is not enough to establish personal jurisdiction. *Id.*

## II.  LEGAL STANDARD

Motions to dismiss under Rule 12(b)(2) involve a burden shifting analysis. The plaintiff must first establish jurisdiction, which may be done through the complaint. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts

showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

A district court has discretion in how it resolves a Rule 12(b)(2) motion to dismiss. *Malone*, 965 F.3d at 505. "If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation omitted). The court's choice affects the plaintiff's burden. *Id.* If the court holds an evidentiary hearing, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* But when the district court rules on written submissions alone, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff" and the plaintiff's burden consists of "a prima facie showing that personal jurisdiction exists." *Id.* The district court may not consider a defendant's affidavit included with its motion to dismiss if it chooses to rule on written submissions alone. *Id.*

In its motion to dismiss, Morehouse did not request any discovery in aid of its motion nor an evidentiary hearing. *See* [Docs. 7, 8, 15]. The Court declines to hold a pretrial evidentiary hearing and exercises its discretion to decide whether Warfield has made a prima facie showing of personal jurisdiction based on the allegations in his pleadings and affidavit alone. [Docs. 1, 14-1].

### III.    ANALYSIS

When exercising diversity jurisdiction, a federal court may assert personal jurisdiction over a nonresident defendant only if a court of the forum state could do the same. *Carbone v. Kaal*, 140 F.4th 805, 809 (6th Cir. 2025). The inquiry involves two steps: (1) the defendant must be subject to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction must be consistent with the Due Process Clause. *AMB Media, LLC v. OneMB, LLC*,

No. 23-5607, 2024 WL 2052151, at *2 (6th Cir. May 8, 2024) (citing *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)). Because Tennessee's long-arm statute reaches as far as federal due process allows, the Court's analysis turns solely to whether exercising personal jurisdiction over Morehouse satisfies constitutional requirements. *Id.*; *see* Tenn. Code Ann. § 20-2-225; *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 646 (Tenn. 2009).

The Due Process Clause of the Fourteenth Amendment prohibits any State from depriving a "person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Consistent with that protection, a court may exercise personal jurisdiction over an out-of-state defendant only when that defendant has "certain minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice.'" *Carbone*, 140 F.4th at 809–10 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction is either general or specific. *Id.* at 810. General jurisdiction exists only when a defendant's contacts with the forum state are "so continuous and systematic" that the defendant is essentially "at home there." *Id.* (citation omitted). Warfield does not argue this Court has general jurisdiction over Morehouse. The Court then considers whether specific jurisdiction exists. Specific jurisdiction applies where the plaintiff's claims "arise[] out of or relate[] to the defendant's contacts with the forum." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). To establish specific jurisdiction, the plaintiff must show a "'substantial connection' among 'the defendant, the forum, and the litigation.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The concern "under either type of jurisdiction 'is the burden on the defendant.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 263 (2017)).

The Sixth Circuit has established a three-part test for specific jurisdiction, commonly referred to as the *Mohasco* test. *Id.* (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374,

381 (6th Cir. 1968)). Under that test, exercising personal jurisdiction satisfies due process only if: (1) the defendant purposefully availed itself of "the privilege of acting, or causing a consequence" in, the forum state; (2) the plaintiff's claims arise from the defendant's forum-related activities; and (3) the defendant's conduct has "a substantial enough connection" with the forum state to make the exercise of jurisdiction reasonable. *Id.* Each element is essential; if any one of the three is not met, specific jurisdiction does not exist. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

A. **Whether Morehouse purposeful availed itself of the privilege of conducting business in Tennessee**

The first criterion focuses on whether Morehouse purposefully availed itself of the privilege of conducting business in Tennessee. Morehouse claims it has not because only a small portion of its business comes from Tennessee. But the Sixth Circuit has made clear that purposeful availment does not turn on the *percentage* of a defendant's business in the forum state. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891–92 (6th Cir. 2002). Instead, the inquiry is whether the defendant's contacts amount to more than "random, fortuitous, or attenuated contacts with the state." *Id.* (quotations omitted). When "a defendant creates repeated contacts through a regular course of business, it has purposefully availed itself of that forum's jurisdiction." *AMB Media, LLC*, 2024 WL 2052151, at *6; *see AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) (holding that a nonresident satisfies purposeful availment when it deliberately engages in "significant activities" in the forum or creates "continuing obligations" with the forum's residents) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)).

Morehouse purposefully availed itself of the privilege of conducting business in Tennessee. It hired Warfield knowing he resided in Tennessee and assigned him a truck to use while working from his home base in Tennessee. [Doc. 1, ¶ 7; Doc. 14-1, ¶¶ 4–8, 19–20]. It also arranged for

Warfield to complete his DOT drug screening near his home in Morristown, Tennessee. [Doc. 14-1, ¶¶ 5–6]. Morehouse conducts business by hauling loads into and out of Tennessee.[1] [Doc. 1, ¶ 7; Doc. 14-1, ¶ 9]. Morehouse's revenue from brokered haul operations into and out of Tennessee occurred in its regular business, creating "continuing obligations between [itself] and residents of the forum." *AlixPartners, LLP*, 836 F.3d at 550. On this record, Warfield has made a prima facie showing that Morehouse purposefully availed itself of the privilege of conducting business in Tennessee.

B. **Whether Warfield's claims arise out of or relate to Morehouse's contacts with Tennessee**

The second criterion is whether Warfield's claims "arise out of or relate to" Morehouse's contacts with Tennessee. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 671 (6th Cir. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). They do not. To satisfy this requirement, Morehouse's contacts with Tennessee must be "related to the operative facts of the controversy." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903 (6th Cir. 2017) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Although the Supreme Court has rejected a strict "causation-only" approach,[2] it also emphasized that the "relate to" standard must nevertheless "adequately protect defendants foreign to a forum." *Ford*, 592 U.S. at 362.

Warfield alleges that Morehouse discriminated and retaliated against him by wrongfully terminating him and having him falsely arrested because of his race in violation of Title VII of the

---

[1] Morehouse contends that it should not be subject to personal jurisdiction because it does not conduct a substantial amount of business in Tennessee. [Doc. 8, pgs. 3–4]. Without conducting an evidentiary hearing, however, the Court may only consider whether Warfield has made a prima facie showing of personal jurisdiction based on the factual allegations asserted by Warfield in his complaint [Doc. 1] and affidavit in response to the motion to dismiss [Doc. 14-1].

[2] In *Ford*, the Supreme Court rejected the argument that jurisdiction exists only where the "defendant's forum conduct gave rise to the plaintiff's claims." *Ford*, 592 U.S. at 361.

Civil Rights Act and that it failed to pay him wages owed under the FLSA. [Doc. 1, ¶¶ 33–44]. These claims, however, arise from and relate to events that occurred outside of Tennessee. Morehouse's employment decisions were made in Nebraska, where it is incorporated and maintains its principal place of business. *Id.* at ¶ 2. The alleged discriminatory conduct, including Morehouse's decision to terminate Warfield and the events leading to his arrest, took place outside of Tennessee. Morehouse's termination of Warfield, whether lawful or not, is unrelated to its business of transporting freight into and out of Tennessee. Thus, the termination decision did not "arise out of or relate to" Morehouse's contacts with Tennessee. *Sullivan*, 79 F.4th at 671.

To be sure, some courts have exercised personal jurisdiction over out-of-state employers in discrimination suits brought by remote employees working in the forum state. But in those cases, the courts exercised personal jurisdiction because the alleged discrimination occurred while the employee was working in the forum state, or because the employer intentionally hired the employee to conduct business in that state. *See, e.g.*, *Helferich v. GlyMed Plus, L.L.C.*, No. 25-10194, 2025 WL 1572337, at *8 (E.D. Mich. June 3, 2025) (finding jurisdiction where defendant employed plaintiff to conduct business in the forum state and much of the alleged discrimination occurred there); *Gronski v. InContact, Inc.*, 774 F. Supp. 3d 873, 886 (E.D. Mich. 2025) (same where remote supervision in the forum state gave rise to the claim); *McGechie v. Atomos Ltd.*, No. 2:22-CV-01812-DJC-DB, 2024 WL 1054924, at *6 (E.D. Cal. Mar. 11, 2024) (holding that discriminatory acts, even done remotely, can establish jurisdiction). By contrast, none of the discriminatory or retaliatory conduct Warfield alleges occurred in Tennessee.[3]

---

[3] Warfield alleges that in November 2023, while in Louisiana, Morehouse refused to pay him for approximately one week while he remained in a hotel waiting for repairs to his assigned truck. [Doc. 14-1, ¶ 10]. He further alleges that the events leading to his termination occurred in Iowa on or about December 5, 2023. [Doc. 1, ¶¶ 15–19; Doc. 14-1, ¶¶ 11–18]. According to Warfield, after delivering a load in Iowa, he drove to a nearby truck stop to shower and eat when

8
Case 2:25-cv-00037-DCLC-CRW    Document 21    Filed 11/06/25    Page 8 of 10
PageID #: 100

Similarly, courts have declined to exercise personal jurisdiction where an employee's claims against an out-of-state employer arose from conduct occurring outside the forum state. *See Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 652 (E.D.N.C. 2018), *aff'd*, 770 F. App'x 77 (4th Cir. 2019) (finding no specific jurisdiction where the alleged discriminatory acts – such as disparaging remarks and work orders – occurred at business conferences and business trips in other states). Likewise, in *Clarke v. Tango Networks, Inc.*, the court held that the plaintiff's claims did not arise from the defendant's contacts with the forum state because the relevant events took place in Chicago and during work trips in Canada and Texas. No. 2:21-CV-00546, 2021 WL 6095328, at *8 (S.D.W. Va. Dec. 23, 2021). And while the court in *Helferich* exercised jurisdiction, it did so because the alleged discriminatory conduct occurred while the plaintiff was working in the forum state; the court expressly noted that the analysis would differ if all the alleged misconduct had happened elsewhere. *Helferich*, 2025 WL 1572337, at *9.

Although Warfield resides in Tennessee and therefore may experience the effects of his alleged injuries here, the location where he feels those injuries is not determinative. "[T]he *locus* of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in [the forum state]." *LAK*, 885 F.2d at 1302–03 (citations omitted). The Supreme Court has emphasized that the defendant's own conduct must create the connection to the forum. *Walden*, 571 U.S. at 284 ("[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State.") (quotations omitted) (emphasis in original). Here, Warfield does not allege that the discriminatory or retaliatory actions he challenges occurred while his was in Tennessee nor does he allege that Morehouse hired him for work specifically

---

no additional loads were assigned to him. He claims that, while there, he was arrested, detained overnight, and charged with theft "based on his employer's call to the authorities." [Doc. 1, ¶ 16].

involving Tennessee deliveries. Warfield's residency alone "cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285; *see also Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018) (holding that where all the facts occurred outside the forum, the claim did not arise from the defendant's contacts with the state). So too here, because all the conduct underlying Warfield's claims occurred outside of Tennessee, the claims do not arise out of or relate to Morehouse's contacts with Tennessee, and specific jurisdiction is lacking.

## IV. CONCLUSION

In sum, although Morehouse has some business contacts with Tennessee sufficient to establish purposeful availment, Warfield's claims do not arise out of or relate to those contacts. Because the second element of the *Mohasco* test is not satisfied, this Court lacks specific jurisdiction over Morehouse. And where either the purposeful availment or "arise out of or relate to" requirement is not met, the Court need not reach the third, reasonableness inquiry. *See LAK*, 885 F.2d at 1303. Accordingly, the Court lacks personal jurisdiction over Morehouse, and the Complaint must be **DISMISSED WITHOUT PREJUDICE**.

A separate Judgment follows.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge